IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GIA M. P.                                                Case No. 6:17-01825-MA

                            Plaintiff,                   OPINION AND ORDER

        v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                            Defendant.

MARSH, Judge

        Plaintiff Gia M. P.[1] seeks judicial review of the final decision of the Commissioner of Social

Security denying her application for supplemental security income ("SSI") under Title XVI of the

Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3). For the reasons that follow, the court reverses the Commissioner's decision

and remands for an immediate payment of benefits.

-------------------------------------------------

        [1] In the interest of privacy, this Opinion and Order uses only the first name and the initial
of the last name of the non-governmental party in this case. Where applicable, this Opinion and
Order uses the same designation for a non-governmental party's immediate family member.

1 - OPINION AND ORDER

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff protectively filed her application for SSI on February 3, 2014. Plaintiff alleges disability beginning December 1, 2010, due to anxiety, depression, post-traumatic stress disorder ("PTSD"), attention deficit disorder, migraine headaches, and sleep apnea. Tr. Soc. Sec. Admin. R. ("Tr.") 65, ECF No. 13. Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). The ALJ held a hearing on November 8, 2016, at which Plaintiff appeared with her attorney and testified. A vocational expert, Todd Gendreau, also appeared at the hearing and testified. On December 16, 2016, the ALJ issued an unfavorable decision. The Appeals Council denied Plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Plaintiff was 46 years old on the alleged onset of disability date and was 52 years old on the date of the hearing. Tr. 65. Plaintiff has obtained a GED and has taken some community college classes. Tr. 49. At the time of the hearing, Plaintiff was working part-time as a courtesy clerk. Tr. 50. Plaintiff has no past relevant work, and has been employed as a bakery worker, construction cleaner, and care giver. Tr. 37, 77-78. Plaintiff has a history of polysubstance abuse and has been sober since 2011. Tr. 57, 59.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). At step five, the burden shifts to the

Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset of disability. At step two, the ALJ found that Plaintiff has the following severe impairments: attention deficit disorder, PTSD, anxiety disorder, and major depression. Tr. 20. At step three, the ALJ found that Plaintiff's impairments, or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed Plaintiff with a residual functional capacity ("RFC") to perform work at all exertional levels with additional limitations:

> [Plaintiff] can understand, remember, and carry out instructions, where she is limited to performing simple, routine tasks. Using judgment would be limited to making simple work-related decisions. Responding appropriately to supervisors, coworkers, and the public could only be done occasionally. Dealing with changes in a workplace setting should be limited to simple work-related decisions. Time off task would be able to be accommodated by normal breaks.

Tr. 23.

At step four, the ALJ found that Plaintiff has no past relevant work. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Plaintiff can perform, including such representative occupations as: hand packager, laborer, and kitchen helper. Accordingly, the ALJ concluded that Plaintiff has not been under a disability under the Social Security Act since February 3, 2014.

////

////

## ISSUES ON REVIEW

Plaintiff contends the following errors were committed: (1) the ALJ improperly evaluated her subjective symptom testimony; (2) the ALJ improperly evaluated the opinion of her treating providers Elaine Mitchell, D.O., and Celeste Walker, QMHP; and (3) the ALJ improperly evaluated the lay testimony of Barbara P. and Shirley Hall. The Commissioner argues that the ALJ's decision is supported by substantial evidence and is free of legal error. Alternatively, the Commissioner contends that even if the ALJ erred, Plaintiff has not demonstrated harmful error.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159; (internal quotations omitted); *Garrison*, 759 F.3d at 1009. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Trevizo*, 871 F.3d at 675; *Garrison*, 759 F.3d at 1009. The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001); *Garrison*, 759 F.3d at 1010.

////

////

# DISCUSSION

## I.     The ALJ Erred in Discounting Plaintiff's Credibility

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. *Trevizo*, 871 F.3d at 678; 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony.[2] *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

---

[2] The Court observes that on March 28, 2016, Social Security Ruling ("SSR") 16-3p became effective, and it eliminated the use of the term "credibility" and superceded SSR 96-7p. The ALJ's decision in this case issued December 16, 2016. SSR 16-3p explains that "[w]hen a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review." SSR 16-3p, *available at* 2017 WL 5180304, *13 n.27 (Oct. 25, 2017). Therefore, the Court applies SSR 16-3p to the evaluation of Plaintiff's symptom testimony.

At the hearing, Plaintiff testified that she was 52 years old, and that she received a GED and took some college classes, but did not receive a degree. Plaintiff testified that she was working two days a week as a courtesy clerk at a grocery store, and had previously worked in the bakery department. Tr. 50-51. Plaintiff testified that she was having difficulty remembering temperatures and proofing in the bakery, so she switched to the courtesy department. Tr. 50. Plaintiff testified that she is absent from work due to stress. Tr. 51. Plaintiff stated that she is unable to work full time because she has difficulty making decisions and remembering things. Tr. 52. Plaintiff stated that she feels like she is always singled out. Tr. 52.

Plaintiff testified that she takes a variety of medications for her depression and anxiety including ritalin, lexapro, gabapentin, klonopin, strattera, and viibryd. Tr. 53-54. Plaintiff described that when she is not working, she stays in the house and watches television. Tr. 54. Plaintiff is able to shop for groceries, but described it as maddening. Tr. 55. Plaintiff has a driver's license. Tr. 55.

Plaintiff has a long history of drug and alcohol problems, and has remained sober since April 2011 by attending counseling and taking methadone. Tr. 57, 59. Plaintiff is on a physician-monitored slow and steady methadone dose reduction schedule. Tr. 695.

In a May 27, 2014 Function Report, Plaintiff indicated that she is unable to work due to her stress, lack of focus, and memory problems. Tr. 190. Plaintiff stated that she cannot retain information and has difficulty learning, and that she becomes anxious and gets flustered. Tr. 190. Plaintiff indicated that she cannot concentrate or stay on task, and needs help all the time. Tr. 190. Plaintiff lives alone in a rental home owned by her mother and her mother provides financial assistance. Tr. 191, 413, 636. Plaintiff stated that in a typical day, she makes coffee, reads, feeds herself, and takes care of her dog. Plaintiff indicated that she can become stressed, then shuts down,

and is paralyzed mentally. Tr. 191. Plaintiff described difficulty getting dressed because she cannot decide what to wear. Tr. 192. Plaintiff also stated that she has a hard time grocery shopping because there are many choices and she becomes overwhelmed. Tr. 192-93. Plaintiff prepares her own food, and is disorganized when cleaning the house. Tr. 193.

Plaintiff indicated that she is able to read, watches television, can have coffee with a friend, can text and talk on the phone, and can have lunch or dinner with her mother one to two times each month. Tr. 194. Plaintiff also regularly attends AA meetings, group therapy sessions, and individual counseling sessions. Tr. 194. Plaintiff described having difficulty with talking, memory, completing tasks, concentrating, understanding and following instructions. Tr. 195. Plaintiff described having a fear of authority figures, but otherwise does not have difficulty with employers. Tr. 195. Plaintiff sleeps with a CPAP machine. Tr. 196.

In the decision, the ALJ gave three reasons for discounting Plaintiff's subjective symptom testimony: (1) her testimony is not fully supported by the objective medical evidence; (2) she received routine, conservative treatment with medication that is effective in controlling her symptoms; and (3) her activities of daily living. After careful review, the Court concludes the ALJ's reasoning falls short of clear and convincing.

A.    *Objective Medical Evidence*

While a claimant's statements regarding the severity of her symptoms may not be disregarded solely because they are not substantiated by objective medical evidence, the ALJ may consider a lack of medical evidence in determining credibility. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). When considering the medical record, an ALJ must evaluate the overall picture the record illustrates and may not "single[] out a few periods of temporary well-being from

a sustained period of impairment and rel[y] on those instances to discredit [Plaintiff]." *Garrison*, 759 F.3d at 1018. With respect to mental health symptoms, the Ninth Circuit has observed that it is error to reject a claimant's testimony because symptoms wax and wane in the course of treatment. *Id.* at 1017-18. Instead, the ALJ must cite specific examples of a "broader development" to satisfy the clear and convincing standard. *Id.; Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017).

The ALJ acknowledged that throughout the record, Plaintiff has sustained diagnoses of major depressive disorder, generalized anxiety disorder, dysthymic disorder, PTSD, and ADHD, and that Plaintiff has received on-going medication management and counseling sessions. However, the ALJ found that "the objective findings of this case fail to provide strong support" for Plaintiff's allegations of disabling symptoms and limitations. Tr. 25. The ALJ found that Plaintiff presented with a sad, depressed, or anxious mood, but also was described as cooperative, likeable, pleasant, and adequately groomed with good eye contact. Tr. 25. And, despite being occasionally withdrawn, restless, fidgeting, rambling, or guarded, the ALJ found that more consistently, Plaintiff was described as logical, goal-directed, organized, having linear thought content, intact/adequate memory, attention, and intact judgment. Tr. 25.

When viewing the record as a whole, the Court concludes that the objective medical evidence does not undermine Plaintiff's credibility. Contrary to the ALJ's finding, Plaintiff's longitudinal medical record does not show a broader development of improving mental health. Rather, the records show the complexity of Plaintiff's mental health conditions. For example, in May 2012 Plaintiff started taking sertraline, and in June and July 2012, she reported improvement in her mood, with increased energy and motivation. Tr. 405, 407. However, in September 2012, Plaintiff reported that her depression had returned, her anxiety was increased, and her energy and

motivation decreased. Tr. 409. Similarly, in January 2013, Plaintiff reported a normal mood, that she was sleeping better, and exercising five times a week. Tr. 419. Yet, the following month, Plaintiff's anxiety was increased, she had increased crying episodes, and an increased startle response. Tr. 423, 428. In March 2013, Plaintiff reported being frustrated and depressed, with no energy. Tr. 438. Plaintiff was started on a new medication, and Plaintiff reported her mood as normal without and that her anxiety was up a little, but her depression was better. In February 2014, Plaintiff appeared to be doing better with a normal mood, and her anxiety stabilized. However, by March 2014, Plaintiff reported increased depression, anxiety and flashbacks. Tr. 479, 485. Two of Plaintiff's mental health providers have described her depressive episodes as coming and going "without provocation" and "without any specific trigger." Tr. 533, 637. This cycle of mental health symptoms is reflected throughout the medical record. *See also* Tr. 636, 714.

Therefore, contrary to the ALJ's findings, the overall diagnostic picture shows waxing and waning depression and anxiety throughout Plaintiff's record, rather than a broader development of lessening symptoms. *See Ghanim*, 763 F.3d at 1164 (finding ALJ erred in discounting claimant's testimony based on treatment notes showing he was "upbeat," "talkative," and "smiling very brightly" where overall diagnostic record showed occasional signs of improvement, but continued mental health issues).

Moreover, the ALJ's review of the record appears somewhat selective. For example, in a July 29, 2013 mental health assessment conducted by Benjamin Moltman, LPC, QMHP, Plaintiff is described as "cooperative, likeable and pleasant," and these portions of the record are cited by the ALJ. Tr. 25-26. However, the ALJ did not discuss Mr. Moltman's other observations that Plaintiff has moderate to severe anxiety, with intense feelings of anxiety lasting for several days, and severe

occupational problems. Tr. 703-10; *see Diedrich*, 874 F.3d at 642 ("the fact that [the claimant] was not exhibiting certain symptoms at the time of her appointment on a particular day does not indicate that [the claimant] was not experiencing those symptoms generally or at other pertinent times."). Additionally, the ALJ found that during physical examinations, the reports document no objective evidence of "mental functioning abnormalities," and instead show good eye contact, normal behavior with no psychomotor retardation or agitation. Tr. 25-26. Here, the ALJ cites records of Plaintiff's primary care physician Katherine L. Beckstrand, M.D., who treated Plaintiff for her physical concerns. Tr. 579, 590, 592, 602, 604, 608. Again, Plaintiff is described as "pleasant, neatly-groomed," and in "no apparent distress" and with a normal mood and affect. Tr. 590, 604, 608. However, the ALJ fails to discuss that in May 2011, Dr. Beckstrand reported Plaintiff was struggling with chronic anxiety, insomnia, and a possible bipolar disorder, was intolerant of multiple medications, and recommended that Plaintiff obtain a psychiatric prescriber to handle her undiagnosed mental health issues in conjunction with her chemical addictive disorder. Tr. 590. The ALJ overlooks that Plaintiff followed Dr. Beckstrand's orders, and began treatment with Dr. Mitchell. Tr. 590. Plaintiff's demeanor and appearance do not necessarily undermine her contention that she suffers from depression and anxiety that prevent her from working full time. *See Gahnim*, 763 F.3d at 1164 (finding ALJ erred in discounting claimant's testimony because he had good cognitive functioning and pleasant demeanor when alleging disability based on anxiety). Thus, the Court concludes the ALJ's findings on this point are not supported by substantial evidence in the record as a whole.

The ALJ also highlighted that Plaintiff's Global Assessment of Functioning ("GAF") scores typically ranged between 58 and 70 as indicating her mental health symptoms are not as severe as

alleged. Tr. 25-26. The American Psychiatric Association abandoned the GAF scale in its most

recent revision to the Diagnostic and Statistical Manual of Mental Disorders. *American Psychiatric*

*Association, Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013) ("DSM-5").

In the prior version, the DSM-IV-TR, the GAF scores was described as a tool used by clinicians to

rate the psychological, social, and occupational functioning of a patient. DSM-IV-TR 34 (4th ed.

2000); *Morgan v. Comm's Soc. Sec. Admin.*, 169 F.3d 595, 598 n. 1 (9th Cir. 1999). GAF scores

between 51 and 60 described "moderate symptoms," or "moderate difficulty in social, occupational,

or school functioning," and scores between 61 and 70 described "some mild symptoms" or "some

difficulty in social, occupational, or school functioning." DSM-IV-TR at 34; *Garrison*, 759 F.3d at

1003 n.4 (noting that GAF scores "may be a useful measurement" but "standing alone, do not control

determinations of whether a person's mental impairments rise to the level of a disability"). The

ALJ's finding that Plaintiff's GAF scores have ranged from 58 to 70 is accurate and supported by

substantial evidence. Tr. 455, 506, 533. However, GAF scores are assigned in a clinical setting and

thus, are not necessarily predictive of a claimant's abilities in a work setting. *Garrison*, 759 F.3d

at 1003 n.4. The Court concludes the ALJ's first reason is not supported by substantial evidence

when viewing the record as a whole.

  *B.  Routine and Conservative Treatment*

  The ALJ characterized Plaintiff's treatment as "essentially routine and conservative in nature

with medication and therapy with no psychiatric hospitalizations or evidence of extended episodes

of decompensation." Tr. 26. The Court disagrees. The ALJ fails to explain how Plaintiff's

extensive history of counseling and prescription medication management qualifies only as "routine."

As other courts have recognized, a "[c]laimant does not have to undergo inpatient hospitalization

to be disabled." *Matthews v. Astrue*, Case No. EDCV 11-01075-JEM, 2012 WL 1144423, at *9 (C.D. Cal. Apr. 4, 2012) (finding years of psychotropic medication and outpatient care not conservative treatment); *Mason v. Colvin*, No. 1:12-cv-00584 GSA, 2013 WL 5278932, at *6 (E.D. Cal. Sept. 18, 2013) (finding antidepressants and antipsychotic medications not conservative treatment); *Odisian v. Colvin*, No. CV 12-9521-SP, 2013 WL 5272996, at *8 (C.D. Cal. Sept. 18, 2013) (finding treatment with psychiatric medications and sessions with a psychologist not conservative treatment); *accord Torquato v. Berryhill,* Case No. 17-cv-02127-BAS-NLS, 2018 WL 3064568, at *6 (S.D. Cal. June 20, 2018) ("There is no requirement that a person be psychiatrically hospitalized or exhibit psychotic symptoms to be found disabled as that term is defined in the Act;]" finding ALJ erred in discounting physician's opinion based on lack of psychiatric hospitalizations).

The ALJ also found that "medications have been relatively effective in controlling [Plaintiff's] symptoms." Tr. 26. Impairments that are effectively controlled with medication are not disabling. *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). However, as the Commissioner correctly concedes, Plaintiff's anxiety and depression have not been well-controlled over the long term with medication. *See* Def.'s Br. at 13 (acknowledging that ALJ erred in finding that her conditions were controlled long term). For example, a March 3, 2015 treatment note from Julie Peterson, PMHNP, one of Plaintiff's psychiatric prescribers, indicates Plaintiff was switching medications from zoloft to cymbalta due to side effects. Tr. 636. Ms. Peterson's July 2015 treatment note indicates that despite Plaintiff's ongoing major depressive disorder, Plaintiff has been unable to tolerate most medications, an observation that echoes those of others providers. *See, e.g.*, Tr. 405, 590, 666. And, as discussed above, Plaintiff's medications appear to work for a period of time, then a depressive episode will occur without provocation. Tr. 637. Thus, the ALJ's finding

simply is not supported by substantial evidence. The ALJ erred in discounting Plaintiff's subjective symptom testimony on this basis.

C.    *Activities of Daily Living*

Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti*, 533 F.3d at 1039. However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). "[T]he mere fact that a Plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). A claimant's daily activities may undermine her allegations if the claimant spends a substantial part of her day engaged in activities that are transferrable to a work setting, or if the activities contradict her testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

In the decision, the ALJ noted that despite Plaintiff's contention that anxiety and depression can "paralyze her" to the point of doing nothing all day, she is able to prepare simple meals, take care of personal needs, shop in stores, and drive. Tr. 24. The ALJ, however, has not identified what particular evidence undermines Plaintiff's allegations. *See Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("The ALJ must identify the testimony that was not credible, and specify what evidence undermines the claimant's complaints." (internal quotation and citation omitted)). "House chores, cooking simple meals, self-grooming, paying bills, writing checks, and caring for a [dog] in one's own home, as well as occasional shopping outside the home, are not similar to typical work responsibilities." *Diedrich*, 874 F.3d at 643. Plaintiff's ability to perform

13 - OPINION AND ORDER

minimal household activities on her own schedule is not readily transferrable to a work setting, and is not so demanding as to be inconsistent with her allegations.

The ALJ appears to suggest that Plaintiff's part-time work as a courtesy clerk work undermines her allegations that she is unable to work. Tr. 24. Plaintiff testified at the hearing that the job was difficult for her because she doesn't follow the rules, gets mixed up, forgets to check in with the correct person, is late, and calls in sick due to anxiety and stress. Tr. 51. The Commissioner contends that the ALJ appropriately discounted Plaintiff's testimony on this basis because she testified that she doesn't follow the rules, a reason unrelated to her disability. Def.'s Br. at 12. The Court disagrees. Reviewing Plaintiff's testimony about working, Plaintiff clearly testified that she was struggling in the job, worked only two shifts a week, was frustrated, and has difficulty finishing her tasks, in addition to testifying that she does not follow the rules. Tr. 51-53. Thus, the ALJ's rationale is not fully supported by substantial evidence. Accordingly, on the record before the Court, this rationale is neither clear nor convincing.

In summary, although the ALJ accurately noted that Plaintiff's GAF scores have shown mild to moderate symptoms, the ALJ's remaining rationales are not supported by substantial evidence when viewing the record as a whole. Accordingly, the ALJ has failed to provide specific, clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. *Ghanim*, 763 F.3d at 1164. The ALJ has erred.

## II.    The ALJ Erred in Evaluating Dr. Mitchell and Ms. Walker's Opinions

### A.    *Standards*

In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the

opinion of a nonexamining physician. *Ghanim,* 763 F.3d at 1160; *Garrison,*759 F.3d at 1012; *Orn,* 495 F.3d at 632. "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn,* 495 F.3d at 631 (internal quotations omitted) (alterations in original); 20 C.F.R. § 404.1527(c). To reject the uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

If the treating physician's opinion is contradicted, the ALJ must consider how much weight it is entitled to considering the factors in 20 C.F.R. § 416.927(c)(2-6). The factors include the length of the treatment relationship, the frequency of examination, the nature and supportability of the opinion, and its consistency with other evidence in the record as a whole. 20 C.F.R. § 416.927(c)(2-6); *Ghanim,* 763 F.3d at 1161. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Ghanim,* 763 F.3d at 1161 (quoting Orn, 495 F.3d at 631).

If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Trevizo,* 871 F.3d at 675; *Ryan v. Comm'r Soc. Sec. Admin.,* 528 F.3d 1194, 1198 (9th Cir. 2008). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002).

Only physicians and certain other qualified specialists are considered "[a]cceptable medical sources." *Molina,* 674 F.3d at 1111 (alteration in original); *see also* 20 C.F.R. § 416.913(a). Nurse practitioners and therapists are considered "other sources." 20 C.F.R. § 416.913(d). While their

15 - OPINION AND ORDER

opinions must still be evaluated, 20 C.F.R. § 416.927(c), the ALJ may "discount testimony from these 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'" *Molina*, 674 F.3d at 1111 (quoting *Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).

    B.    Dr. Mitchell

Plaintiff contends that the ALJ erred in failing to properly weigh the opinions of her treating psychiatrist, Elaine Mitchell, D.O. Dr. Mitchell treated Plaintiff from October 2011 through December 2014, and met with Plaintiff approximately once per month. Plaintiff argues the ALJ failed to consider the appropriate factors or provide specific and legitimate reasons to discount Dr. Mitchell's opinion. Plaintiff is correct.

On November 18, 2014, Dr. Mitchell provided a Mental Residual Functional Capacity ("MRFC") Assessment in which she opined that Plaintiff had multiple moderately severe limitations in the areas of understanding and memory, sustained concentration and persistence, social interaction, and adaption. Tr. 514-16. In the MRFC, "moderately severe" was defined as a limitation that "precludes an individual's ability to perform the designated activity on a regular and sustained basis for 8 hours a day, 5 days per week." Tr. 513. Specifically, Dr. Mitchell opined that Plaintiff has moderately severe limitations in her ability to: understand and remember detailed instructions; maintain attention and concentration for extended periods; maintain regular attendance and be punctual; complete a normal workday without interruptions from psychologically based symptoms; accept and respond appropriately to criticism from supervisors; respond to changes in the work setting; and set realistic goals. Tr. 514-16. In the MRFC, Dr. Mitchell also stated that Plaintiff is "highly anxious and gets overwhelmed with expected daily stress and this results in impaired memory and functional impairment" and she opined that Plaintiff would miss four to five

days of work a month secondary to anxiety and depression. Tr. 516. Dr. Mitchell indicated Plaintiff

has been her patient for three years, and based her opinion on Plaintiff's diagnoses of depression and

anxiety. Although not specifically discussed by the ALJ, in a July 19, 2013 treatment note, Dr.

Mitchell also opined that Plaintiff is "not capable of working full time – five days a week at 8 hours

a day without excessive absenteeism." Tr. 450. At the hearing, the vocational expert ("VE")

testified that absences greater than one day per month, or being off task 15 percent or greater would

preclude competitive employment. Tr. 62.

As Plaintiff correctly highlights, the ALJ did not expressly find that Dr. Mitchell's opinion

was contradicted by another physician, but the Court can infer that the opinion was inconsistent with

those of the agency reviewing physicians, Bill Hennings, Ph.D., and Kordell N. Kennemer, Psy.D.,

who opined that Plaintiff is capable of understanding and remembering one to two step tasks but not

complex tasks, and can maintain concentration, persistence, and pace for one to two step tasks and

occasionally for complex tasks, and was not significantly limited in her ability to maintain regular

attendance. Tr. 75-76, 92-93. Therefore, the ALJ was required to provide specific and legitimate

reasons, backed by substantial evidence to reject Dr. Mitchell's opinion. After careful consideration,

the Court concludes the ALJ's rationale does not meet this bar.

In the decision, the ALJ afforded Dr. Mitchell's opinion "little weight" because Dr.

Mitchell's treatment notes fail to reveal "mental health abnormalities" to support the assessed

limitations, Dr. Mitchell consistently assigned GAF scores between 60 and 70, and the opinion was

based on Plaintiff's unreliable subjective reports. Tr. 26. The Court concludes the ALJ erred in

failing to apply the appropriate factors in determining the extent to which Dr. Mitchell's opinion

should be credited. 20 C.F.R. § 416.927(c)(2-6); *Trevizo*, 871 F.3d at 676 (finding ALJ erred as

matter of law in failing to discuss factors when discounting treating physician's opinion). Indeed, Plaintiff consistently met with Dr. Mitchell monthly over the course of three years, and the record contains treatment notes covering 30 appointments. Tr. 397-497, 517-51. In rejecting Dr. Mitchell's opinion, it is clear that the ALJ failed to consider their three year relationship and the consistent, frequent examinations.

A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discount a treating physician's opinion. *Ghanim*, 763 F.3d at 1161; *Molina*, 674 F.3d at 1112-12. However, substantial evidence does not support the ALJ's conclusion Dr. Mitchell's opinion is inconsistent with her own treatment notes. On the contrary, Dr. Mitchell's treatment notes reveal that Plaintiff suffers "episodes of depression that come and go without any specific trigger." Tr. 538. As discussed at length above, Dr. Mitchell's treatment notes clearly show Plaintiff's depression and anxiety waxed and waned from 2012 through 2014. Plaintiff experienced several months where her symptoms were controlled, then she would suffer a depressive episode and/or her medications would cease to be effective. *See* Tr. 405, 407. 409, 419, 423, 428, 438, 479, 485.

Concerning the lack of "significant mental functioning abnormalities" in Dr. Mitchell's treatment notes, the ALJ does not articulate what additional information was needed to "address this weakness." Tr. 26. The Court surmises that the ALJ determined that Plaintiff's depression and anxiety are not profound enough, due to her lack of psychiatric hospitalizations and lack of episodes of decompensation noted elsewhere in the decision. Tr. 26. The absence of significant mental functioning abnormalities, hospitalizations, or decompensations is not a legitimate basis for rejecting Dr. Mitchell's opinion. *See Torquato*, 2018 WL 3064568, at *6 (finding lack of mental health

hospitalization was not a specific and legitimate basis for rejecting treating physician's opinion). "A claimant need not be completely incapacitated to receive benefits." *Ghanim*, 763 F.3d at 1162.

The ALJ also erred in discounting Dr. Mitchell's opinion because it is based on Plaintiff's self-reports. "If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim*, 763 F.3d at 1162 (citing *Tommasetti*, 533 F.3d at 1041). "However, when the opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Id.* Here, it is not clear that Dr. Mitchell's opinion is based more heavily on Plaintiff's self-reports than her own clinical observations gleaned from their three year treatment history. *See Ryan*, 528 F.3d at 1199-1200 (finding ALJ erred in discounting treating physician's opinion based on claimant's credibility where physician's opinion premised on own observations). The ALJ pointed to no basis for his conclusion that Dr. Mitchell uncritically relied on Plaintiff's report of her symptoms. Additionally, as discussed above, the ALJ erred in rejecting Plaintiff's testimony, and this rationale therefore cannot support the rejection of Dr. Mitchell's opinion.

In summary, the ALJ failed to provide specific and legitimate reasons, backed by substantial evidence for discounting Dr. Mitchell's opinion. The ALJ has erred.

C.    *Ms. Walker*

Plaintiff argues that the ALJ erred in giving "little weight" to the opinion of Celeste Walker, a Qualified Mental Health Professional ("QMHP"). Ms. Walker provided counseling to Plaintiff in September and October 2016. Tr. 711, 718. In a November 4, 2016 MRFC Assessment, Ms. Walker described that Plaintiff suffers from several moderately severe limitations, including the

ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention for extended periods; maintain regular attendance; sustain an ordinary routine without supervision; complete a regular work day and workweek without interruption from psychological symptoms; respond appropriately to changes in the work setting; and set realistic goals. Tr. 723-26. "Moderately severe" was defined as precluding the individual's ability to perform the designated activity full time or the individual would be off task 15 percent or more. Tr. 723.

In the decision, the ALJ gave Ms. Walker's opinion little weight because: (1) she is not an acceptable medical source; (2) her reports fail to document significant "mental functioning abnormalities;" (3) the longitudinal record showed Plaintiff was cooperative, with normal psychomotor activity and GAF scores between 58 and 70; and (4) the comments to her opinion contain only Plaintiff's self-reports rather than objective findings. The ALJ was required to provide germane reasons, backed by substantial evidence, for discounting Ms. Walker's testimony.

As discussed above with respect to Dr. Mitchell, the ALJ's finding that Ms. Walker's treatment notes show a lack of significant "mental functioning abnormalities" is not supported by substantial evidence. To be sure, Ms. Walker's September 28, 2016 treatment note indicates chronic severe depression and moderate to severe anxiety, with mixed results on medication due to intolerance. Tr. 715-16. Additionally, Ms. Walker indicated that Plaintiff reported an increase in her depression and anxiety when she began working part time and dating. Tr. 716. Ms. Walker's October 12, 2016 treatment note also reflects that Plaintiff continued to rely on her mother financially and emotionally, and experienced great anxiety and emotional shut down when attempting to function more proactively and independently. Tr. 718-19. Again, a claimant need not

be incapacitated in order to assert disability. The ALJ's rationale is not supported by substantial evidence.

The ALJ's third rationale similarly fails. Again, as discussed above, the longitudinal record shows that Plaintiff has waxing and waning depression and anxiety, with difficulty concentrating and low frustration tolerance. Ms. Walker's opinion is entirely consistent with Dr. Mitchell's opinion and the overall diagnostic record of Plaintiff's mental health, and thus, the ALJ's finding is not supported by substantial evidence in the record as a whole.

The ALJ also discounted Ms. Walker's opinion because the comments to her opinion were based on Plaintiff's self-reports. Tr. 27, 725. Reviewing the commentary to Ms. Walker's opinion, it does contain language that could be based on Plaintiff's self-report, and therefore arguably could be a germane reason. *See* Tr. 725 (noting that after beginning to work part time, Plaintiff "reports extreme frustration and confusion in following details instructions"). However, in light of record as a whole, the Court concludes that Ms. Walker's assessed limitations in her opinion also may be based on her clinical observations. For example, in her September 2016 treatment note, Ms. Walker indicated that Plaintiff has difficulty controlling her worry, difficulty concentrating, difficulty sustaining attention and organizing tasks, and is forgetful. Tr. 713. Additionally, as discussed above, the Court concluded that the ALJ did not provide clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. This rationale is not a reason germane to Ms. Walker and supported by substantial evidence.

On the contrary, Ms. Walker's assessed limitations are supported by other evidence in the record as a whole. For instance, Bruce Hinson, QMHP, reported that Plaintiff has not been able to attend school or work full time with any amount of success, a record the ALJ fails to discuss. Tr.

695. Additionally, Plaintiff reported extreme difficulty in staying organized while attempting to take classes at school, leading to increased anxiety and depression. Tr. 415, 423. And, Dr. Mitchell opined that Plaintiff is not capable of working full time. The Court concludes that simply because Ms. Walker is not an acceptable medical source does not, on the record presently before the Court, provide a germane reason backed by substantial evidence in the record as whole, for rejecting Ms. Walker's opinion. *See Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017) (finding ALJ erred in discounting opinion of nurse practitioner because she was an "other source," provided opinion on check-the-box form, and was inconsistent with medical evidence)

In summary, on the current record, the Court concludes that the ALJ has failed to provide reasons germane to Ms. Walker for discounting her opinion.

Because the errors addressed above are outcome determinative, the Court declines to address Plaintiff's remaining error as moot.

## III.    **Remand**

After finding the ALJ erred, this court applies a three part test to determine whether the case should be remanded for further proceedings, or to calculate and award benefits. Garrison, 759 F.3d at 1020; *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The court should grant an immediate award of benefits when these three conditions are met:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose, (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020. Where, after evaluating the record as a whole, there are serious doubts that the claimant is, in fact, disabled, the court may exercise its discretion and remand the case for

further administrative proceedings. *Id.* at 1021; *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003).

Here, all the conditions of the credit-as-true rule are satisfied. First, the record has been fully developed and there is no need for further administrative proceedings. Second, the ALJ failed to provide legally sufficient reasons for giving little weight to the opinions of Dr. Mitchell and Ms. Walker, and for discrediting Plaintiff's testimony. Third, if Dr. Mitchell and Ms. Walker's opinions are credited as true the ALJ would be required to find Plaintiff disabled at Step Five on remand. *Popa*, 872 F.3d at 908; *Garrison*, 759 F.3d at 1022.

Indeed, Dr. Mitchell opined that Plaintiff would miss four or more days each month due to her depressive and symptoms. Tr. 354. Ms. Walker also opined that Plaintiff has numerous moderately severe limitations that would prevent her from sustaining work full time, or would cause her to be off task 15 percent or more. The VE testified that if a person was absent from work for two or days a month, competitive employment would be precluded. Tr. The VE also testified that a person who works at a 75 percent pace compared to that of an average employee, or needed extra rest breaks each day, would be precluded from competitive employment. Tr. 75. Therefore, there are no outstanding issues that require resolution.

Lastly, considering the record as a whole and the Commissioner's arguments, the Court has no basis to doubt that Plaintiff disabled under the Act. Therefore, the proper remedy is to remand for calculation of benefits. *Popa*, 872 F.3d at 908; *Garrison*, 759 F.3d at 1022-23.

////

////

////

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED, and this case is REMANDED for an immediate calculation and award of benefits.

IT IS SO ORDERED.

DATED this __23__ day of AUGUST, 2018.

_Malcolm F Marsh_
Malcolm F. Marsh
United States District Judge